UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUIS JAVIER PEREZ-MONTIJO,

     Plaintiff,

v.                                                                    Hon. Jane M. Beckering

UNKNOWN GRAHAM, et al.,                             Case No. 1:26-cv-885

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Luis Javier Perez-Montijo filed his pro se complaint in this action on March 18, 2026, alleging federal law claims pursuant to 42 U.S.C. § 1983 against Montcalm County Deputy Sheriff Unknown Graham; the Montcalm County Sheriff's Department; the Montcalm County Board of Commission; John Doe #1, identified as a 911 dispatcher; John /Doe #2, identified as the deputy who assisted Deputy Graham; John Doe #3, identified as a Montcalm County prosecutor; and John Does identified as the prosecutor's "goon squad." Plaintiff alleges claims for violation of: (1) his Fourteenth Amendment right to due process under the so-called state-created danger doctrine; (2) his First Amendment right of access to the courts; (3) his Fourteenth Amendment right to familial association; and (4) his Fourth Amendment right against unreasonable seizure of his liberty and person resulting from a forced removal from a "safe zone." (ECF No. 1 at PageID.4.)

On March 19, 2026, I granted Plaintiff's motion to proceed *in forma pauperis*. (ECF No. 7.) Accordingly, I have conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

Based on this review, I recommend that the Court dismiss the complaint for failure to state a claim upon which relief can be granted.

## I.  Background

According to the complaint, Plaintiff saw and heard some concerning things on October 23 and 24, 2026. Plaintiff's acquaintance, David Pattengill, had asked Plaintiff to help him move and picked up Plaintiff from his house around 8:00 a.m. on October 23. At some point when they arrived at Pattengill's house, Plaintiff noticed an additional eight people who were high on meth and had not slept in five days. Around 8:00 or 9:00 p.m., he noticed a girl who kept complaining that her boyfriend was beating her up. (*Id.* at PageID.8.) The girl's brother said that he was going to do something about it.  Around 11:00 p.m., Plaintiff told Pattengill that he was tired and wanted to go home, but Pattengill told Plaintiff he would not take him home because Pattengill was not done moving. At some point, Pattengill and his friend offered Plaintiff $100 to kill someone, but Plaintiff told them no. (*Id.*)

Around 12:00 a.m., Pattengill and his friends decided to leave without Plaintiff, who was still working. When they returned around 4:00 a.m. the next morning they were "scared and fidgety." (*Id.*) Plaintiff asked Pattengill again to take him home, but Pattengill told him, "no[,] not yet." Plaintiff finally made it home around 3:00 p.m. that afternoon, but Pattengill was not done with him. Pattengill called Plaintiff and said that he needed more help, so Plaintiff returned to Pattengill's house. (*Id.*)

When Plaintiff arrived at Pattengill's house he noticed two vehicles with broken lights. He also saw a van they had used to move Pattengill's belongings the previous day that was now up on blocks with its tires, brakes, and calipers removed. Six people were inside the van, possibly

2

removing evidence. Duct tape was all around the van, the bottom part had been painted black, and tint had been applied to the windows to block the view inside. (*Id.*)

Either the same day or the next, Pattengill asked Plaintiff to take him to get some "putting stones." Plaintiff agreed and they drove his truck with a small trailer to a potato field. Plaintiff saw "a three man-made hole" and a miniature excavator. Plaintiff thought it strange that Pattengill would have an excavator because he didn't know how to operate one. He then found a rental receipt bearing the name of a woman who smoked meth and was currently incarcerated. Pattengill would not allow Plaintiff to leave the truck while Pattengill and his son worked. However, Plaintiff observed that instead of "putting stones," they were moving "huge boulders with human blood" on them. (*Id.*)

Plaintiff wrote a 15-page statement and took it to the Belding Police Department, but they told him it was not within their jurisdiction and suggested that he call the Montcalm County Sheriff's Department (MCSD). Plaintiff followed up with the MCSD, but they never investigated his allegations, so Plaintiff took matters into his own hands and "posted everything on Facebook so people could know the truth." (*Id.* at PageID.9.) Consequently, he "became a [t]arget" and was forced to leave his house because his life was in danger. (*Id.*)

While cleaning his truck, Plaintiff noticed two sets of dirty, bloody rotors under a tarp in his truck. He stopped at the Michigan State Police post in Howard City to report the rotors, but they told him to call Montcalm County and notify them. Plaintiff placed a 911 call sometime between October 25–31, 2025 to report the rotors, but the 911 dispatcher told Plaintiff they did not want them, and he could throw them away or "destroy the homicide evidence" by some other means. (*Id.*)

In the early morning of December 9, 2025, Plaintiff was at a gas station in Howard City when a vehicle approached and rammed his truck from behind. Plaintiff noticed that the passengers had a weapon. Somehow, Plaintiff ended up chasing the vehicle and got its license plate number. (*Id.*) He then called 911, and the dispatcher told him to go to the nearest gas station and wait for a deputy to arrive. Deputy Graham arrived at the gas station but declined to take the license plate number of the vehicle from Plaintiff. When Plaintiff began to argue with Deputy Graham, Deputy Graham went inside and spoke with the girl working inside in order to "solicit a trespass" but was unsuccessful. Deputy Graham then exited the building and went across the street and began talking to Plaintiff and harassing him. Plaintiff then called 911 to report Deputy Graham's behavior and asked them to send another deputy to the gas station. While Plaintiff was waiting for the second deputy, he noticed Deputy Graham parked parallel with the owner of the gas station and speaking to her on the phone. Shortly thereafter, Deputy Graham, knowing that someone had just tried to kill Plaintiff, trespassed Plaintiff from the gas station. (*Id.*)

Plaintiff decided to file a criminal complaint against Deputy Graham for misconduct in office and took it to the Montcalm County prosecutor's office, but the prosecutor refused to accept it. The prosector then sent a "goon squad of armed deputies" to intimidate Plaintiff in the lobby and prevent him from filing a criminal report against Deputy Graham or filing the homicide report. (*Id.*)

## II.  Discussion

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's

allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*,

510 U.S. 266, 271 (1994). Here, while Plaintiff has sued state actors, he fails to allege a constitutional violation.

First, Plaintiff mentions the Fourth Amendment. The Fourth Amendment prohibits "unreasonable searches and seizures." *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir. 2006). Plaintiff does not allege that any Defendant seized him or his property or used any force against him. Plaintiff does not allege that Deputy Graham used any force against him in trespassing him from the gas station. Plaintiff had no right to remain at the gas station once the owner trespassed him. As for the "goon squad," they merely "intimidated" Plaintiff after the prosecutor refused to accept his criminal complaint against Deputy Graham. Essentially, they sought to have Plaintiff leave a public building in which he had no right to remain.

Next, Plaintiff mentions his due process right to familial association. While Plaintiff has a substantive due process right of familial association, *see Chambers v. Sanders*, 63 F.4th 1092, 1096 (6th Cir. 2023), he alleges no fact indicating that any Defendant did anything to interfere with his relationship with his children or any other family member. To the extent Plaintiff believes that Defendants' failures to investigate his homicide allegations or protect him from his own Facebook-created danger somehow interfered with his familial relationships, he fails to state a constitutional claim. As will be explained below, Plaintiff's reliance on the state-created danger doctrine is misplaced on the facts he alleges.

Next, to the extent Plaintiff believes that he has a constitutional right to have Defendants investigate his allegations, he is mistaken. A victim or witness "does not have a constitutional right to have the police investigate his case at all[.]" *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)). *See also Khaled v. Dearborn Heights Police Dep't*, 711 F. App'x 766, 771 (6th Cir. 2017) (citing

6

*Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007)) (stating that "there is no right to an adequate police investigation"); *Winding v. Memphis Police Dep't*, No. 2:24-cv-2643, 2025 WL 2453802, at *4 (W.D. Tenn. Aug. 26, 2025) ("There is no constitutional right to a police investigation."); *Hailey v. Logan Cnty. Detention Ctr.* No. 1:24-CV-P60, 2024 WL 1904337, at *2 (W.D. Ky. Apr. 30, 2024) ("Several courts, including this one, have held that there is no constitutional right to file a police report." (collecting cases)). Likewise, to the extent that Plaintiff alleges that Defendants failed to arrest and/or prosecute Pattengill or anyone else for the murder that Plaintiff believes occurred, he fails to allege a constitutional violation. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005) (no due process right to have someone else arrested for a crime); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (no constitutional interest in prosecution or non-prosecution of another); *Webb v. Caldwell*, 664 F. App'x 695, 696 (10th Cir. 2016) ("Though one might receive a benefit from having someone prosecuted or arrested, one lacks a constitutional right to such a response from governmental officials."). Finally, contrary to Plaintiff's allegation, the 911 dispatcher did not violate the constitution by declining to accept the brake rotors and telling him that he should dispose of them.

Next, Plaintiff's allegations do not plausibly establish an access-to-the courts claim. Plaintiff's theory seems to be that the prosecutor violated his access right by refusing to accept his criminal complaint against Deputy Graham. As already mentioned, Plaintiff has no constitutional right to file a criminal complaint, have the police investigate his allegations, or have another individual prosecuted. No one violated Plaintiff's right of access to the courts.

Last, Plaintiff's allegations do not support application of the state-created danger doctrine. To the extent Plaintiff asserts that Defendants failed to respond to alleged threats or failed to protect him or his family, such a claim fails because the Supreme Court has made clear that "a State's

7

failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney*, 489 U.S. at 197. Nonetheless, relying on language in *DeShaney*, the Sixth Circuit has recognized that public officials may be held liable for "caus[ing] or greatly increas[ing] the risk of harm to [their] citizens without due process of law through [their] own affirmative acts." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). To establish liability under the "state-created danger" theory, a plaintiff must show:

> 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) (citing *Kallstrom*, 136 F.3d at 1066). Plaintiff fails to allege any of the elements required to establish such a claim. Plaintiff's claim is nothing more than Defendants failed to act, which "does not cause a 'state-created danger' to arise." *Brooks v. Knapp*, 221 F. App'x 402, 407 (6th Cir. 2007) (*citing Cartwright*, 336 F.3d at 493, and *Sargi v. Kent City Board of Education*, 70 F.3d 907, 912–13 (6th Cir. 1995)).

### III.  Conclusion

For the foregoing reasons, I recommend that the Court dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted.

The Court must also decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Good faith is judged objectively, *Coppedge v. United States*, 369 U.S. 438, 445 (1962), and an appeal is not taken in good faith if the issue presented is frivolous, defined as lacking an arguable basis either in fact or law. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). For the same reasons that I recommend dismissal of the action, I discern no good faith basis

for an appeal and recommend that, should Plaintiff appeal this decision, the Court assess the

$605.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610-11.


Date:  March 25, 2026                                    /s/ Sally J. Berens
                                                        SALLY J. BERENS
                                                        U.S. Magistrate Judge


## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).